Fourth case of the morning, Appeal No. 251729, Amanda Sima v. Benesch. Mr. Gordon. May it please the court, I represent Amanda Sima, that's how she pronounces her name. She asserted a legal malpractice claim and her claim was dismissed by the district court under Rule 12 standards. Our argument on appeal is that if you take a look at the evidentiary allegations in the second amended complaint, she adequately alleged a malpractice claim that was plausible for the purposes of Twombly and Rule 12, and that the district court erred. I believe that the district court got itself down an erroneous path a number of ways. First off, the district court seemed to think that the allegations in the complaint needed to be comprehensive, almost as if it was like a closing argument. For example, the district court talked about how Ms. Sima never alleged what claims would be lost, what the relevant statutes of limitations were, or how the impending expiration date somehow made the claims impossible to pursue. I was reading from the court's order. None of those allegations were necessary. They might have been interesting, maybe even essential if what we were talking about, Rule 56, but this is not a Rule 56 motion, this is a Rule 12 motion. She's a pro se litigant entitled to a liberal construction of the pleadings in the complaint, and she doesn't have to allege every imaginable step in the causal chain between what the lawyers did and what her damages were. That's the first mistake that I think the judge made that led to erroneously dismissing or granting the Rule 12 motion. The second is that the district court essentially applied contract law to a legal malpractice claim, which is an error. The court did recognize that legal malpractice claims typically, including in Ohio, roll together a variety of the claims that are brought against the lawyers. So breach of contract is one of those claims, negligence, breach of fiduciary duty, constructive fraud, all become a single claim for legal malpractice. Does it matter that the plaintiff and the Benes firm agreed that the firm would not pursue litigation under its original terms of engagement? The honest answer is kind of, if that makes any sense. No, it doesn't matter because a legal malpractice is a common law claim, and the duties are created at common law. And if the lawyer creates a contract that says, this is all I'm going to do, it doesn't obviate the need to meet the standards of care applicable to attorneys. Well, let me rephrase that and see if you agree with it. Mr. Barker and his colleagues never agreed, we're willing to basically invest the money in our time on the fly here, on a contingent basis to pursue this claim. But they would have had an obligation not to undermine her position. Would that be accurate? If she were to go forward with, for example, other attorneys? Correct. Absolutely, they can't do anything that hurts the claim.  So in our West Bend case, and it wasn't Ohio law as I recall, but we basically said in a legal malpractice claim, you've got to be able to show you would have had a better result in the case within the case, right? Do you, can you point us to Ohio law that allows room for, in essence, a lost opportunity to settle? No, and I don't think there's such a thing as, unfortunately, such a thing as a lost opportunity claim as such. The idea, you know, I say that, I take that back. There is a case, I think it's a Wisconsin case, where in the middle of trial, the opposing side said, you know what, we have a settlement proposal for you, and the client's lawyers never relayed the settlement proposal. And the court said, well, that settlement proposal was sufficiently specific, and it came at a time where there was a fuse on it, so yes, there was a lost opportunity claim. So I jumped too soon, but I cannot point to, in fact, I'm comfortable saying there's no Ohio case, saying that there's a lost opportunity claim. And so that would not be our theory as to the causal chain here. So what is the theory then? The theory is that she did not have sufficient time under the facts of this case to start the lawsuit or get counsel to help her to start the lawsuit. But here's where we go in circles, because I'm not unsympathetic to that argument, but what was the claim? There's a vague reference to an impending limitations deadline, but what is the claim? A couple of things. The direct answer to your question is it was a misappropriation of intellectual property claim. Under Ohio law, the statute of limitations was four years. She only had three months left to bring that claim when her lawyers, I'll call it abandoning her. None of that is in the record, which is why I haven't said anything, but that's the answer. Did she suffer any damage irrespective of whether she would have succeeded on the merits of her underlying claim? Yes. She's made an effort in Colorado to mitigate her damages, so there's a lawsuit there. The theory is a little different there. All of the attorney's fees she's incurring to mitigate her damages are reasonably recoverable in the legal malpractice case. She did pay some fees to the Benesh firm and hasn't been reimbursed. Then we can get into a whole discussion about emotional distress damages, which is a fascinating discussion, but I don't think we need to go there right now. What is the status of the Colorado litigation? It stayed pending the outcome of this appeal. After the trial court there found claims barred by statute of limitations? Initially, the court made that finding, and then we filed a motion for reconsideration, and the court said, well, actually, the claim that you have is aiding and abetting abuse of process. That's not barred by the statute of limitations. That has to do—it's against Novalex and Nelson Mullins, but the cause of action accrues when the aiding and abetting takes place as opposed to when the misappropriation takes place. Therefore, there was considerably more time. What's the abuse of process? I misspoke. Aiding and abetting a breach of fiduciary duty. And who owed—what fiduciary duty are we talking about? We're talking about— The Benesch fiduciary duty to Syma? Benesch and Attorney Barker. Okay. All right. They had a fiduciary— Yeah, yeah, yeah. I get that. Okay. Actually, I have two minutes, and I was going to reserve one, but I think I'll reserve those two and take my seat. Thank you, Mr. Borden. Mr. Smith? May it please the Court, Dylan Smith for Justin Barker. The premise of this entire lawsuit is that Ms. Syma lost a valuable claim or claims. So, you know, as your honors questions pointed to, that means that she needed to allege facts plausibly suggesting that she had some viable claim to begin with and that she lost that claim as approximate result of defendant's conduct. Okay. So, she alleges that Mr. Barker told her in December of 2022 that her claims could be worth $100 million. She does allege that, but we don't even know what the claim is, and I would point— Go ahead. Sure. It's not enough to just say my lawyer said I had a viable claim. I mean, you can look at the Ignarski opinion that we cite in our case. We're on a bit of a fool's errand here chasing down what is the claim. I think those questions were very apropos, and let me— Well, if you've got a pro se plaintiff, right, who says my lawyer— I don't understand this stuff. I thought I was treated unfairly by Novalex, but my lawyer told me I have these valuable claims, and is it reasonable then for the district court to infer that the lawyer, a lawyer who gave such advice, would have thought about what those claims might be and what the statute of limitations might be? Let me answer that in a few ways, Judge. First of all, I think the answer is no under the law in the case within a case doctrine, but I'll come back to that. Let's assume we've got enough here based on the allegations that you're pointing to to say that there was some unspecified claim that had value, okay? And I want to come back to the Colorado case and the unfair trade secret claim and all of that, but let's just bracket that assumption. Then we get back to the basis of Judge Blakey's opinion below, which I think goes to Judge Maldonado's question, which was what was the claim, how do we know when the statute of limitations run? All we have in this complaint is a concession that the statute of limitations had not run. There are no facts that allow us to determine when that statute of limitations accrued, what the applicable statute of limitations was, and when it expired. And let me show you what I mean by saying we're on a fool's errand here. The truth of the matter is that the Colorado case, you know, there's a footnote, footnote four in Ms. Simon's reply brief says, you know, defendants know what that claim is. It's been pleaded in Colorado. When you look at the underlying claims, and I mean the underlying claims, the trade secret and related claims against Novalex in the Colorado action, that were dismissed on statute of limitations grounds there. Those are asserted under Colorado law, which kind of makes sense actually, because the allegation there is Novalex is a Colorado company, Ms. Simon is a Colorado resident. Why is that relevant? Unlike Ohio, Colorado has a three-year statute of limitations. The allegation in the complaint here is that Ms. Simon was aware of this design in July of 2019. Now, if that's true, the statute of limitations had run on the unfair trade practices claim, and by the way, on the other claims that are mentioned in the Colorado case before the Benes engagement. Now, the fair reading of the complaint, Judge Hamilton, you're alluding to this, is there's some reference to the fact that Ms. Simon was seeking out counsel for unfair trade practices, unjust enrichment contract. The allegation, that's in paragraph 11 of the second amended complaint. When you get to paragraph 1719, the allegation is Mr. Barker told her pretty much from the get-go, okay, before he's alleged to have been laboring under a conflict of interest, you don't have a trade secret claim. And the allegation is that Ms. Simon discussed with her lawyers there was some agreement on pursuing some other viable path. It's not specified what that path is. Then we get to paragraph 50 of the second amended complaint, and there's some reference to there possibly being a contract claim against F.M. Turner. Okay, F.M. Turner is the intermediary who supposedly also committed double dealing with Ms. Simon. F.M. Turner happens to be an Ohio company. Well, we pointed out in our briefs below, and there's a footnote in our appellate brief to this, if you assume there's an Ohio breach of contract case, that statute of limitations had not run by the time Ms. Simon filed the malpractice action here. So where are we? We are left to speculate as to what that underlying claim is. Mr. Smith, is there any dispute that Mr. Barker did breach his duty? I'm not talking about damages or the case within a case, but the breach and the, you know, conflict of interest. Well, let me just say, because I do have a client, we strongly dispute that as a factual matter. I understand I'm on the top floor of the Dirksen building in an appeal from a motion to dismiss, and, you know, we're picking our battles. So I think, you know, for our purposes, we're not contesting at the pleading stage an allegation of a breach. We're hanging our hat on. There aren't adequate allegations of injury. There aren't adequate allegations, therefore, of proximate cause. And Judge Hamilton, you brought up the West Bend Mutual Insurance case. And I think West Bend Mutual Insurance can be looked at as this court's effort to apply Twombly and Iqbal in a situation where the case within a case doctrine applies. On that topic, you know, the district court did apply the heightened pleading standard for fraud claims. So are you agreeing that that's not appropriate here? Well, I do think to the extent you're going to conceive of this as a fraud claim, one thing you have to keep in mind in terms of how this has been litigated is, in fairness, you did have a pro se complaint below that broke the claims down into these various theories. I think Judge Blakey acknowledged he was dealing with a pro se plaintiff, bent over backwards, and kind of went through all of the different claims. But appellate counsel, now trying to put the best face on this complaint, trying to come forward with a coherent theory, has acknowledged what I think is correct, that these claims relate to the representation. They probably should be conceived of as legal malpractice claims. But I think to the extent this is conceived of as a fraud claim, I think it was perfectly appropriate to apply 9B. I don't think you need to get into that for purposes of upholding Judge Blakey's decision. You know, and if you read our brief on the motion to dismiss the second amended complaint, we did say, look, you've got this problem with injury and proximate causation all across the board. And, by the way, if you go through the elements of these different claims, she doesn't have that either. And, you know, I will say this. You know, one thing I don't hear is counsel saying this was just an inartfully pleaded complaint. Here are the goods. It's more pushing back on what the law is. It's very clear, if you look at Environmental Network Corp. out of the Ohio Supreme Court and the cases that follow that, which these are all later cases than the Vigila case that Ms. Simons' counsel is following, the case within a case doctrine applies. And if the case within a case doctrine applies, that's a requirement of pleading, not just of proof. That's what the court said in West Bend Mutual. And there was a dissent which argued pretty forcefully that there was more in that plea. I'm familiar with that dissent. What's that? I'm familiar with that dissent. Yes. Well, I try not to name check. But, anyway, everyone agreed on the legal principle, but there was arguably more in that pleading to apply the case within the case doctrine. So I'm going to stop there. I see my time's up. Thank you. Thank you, Mr. Smith. Ms. Schaller. Alexandra Schaller on behalf of Benesch, Freelander, Copeland, and Aronoff. May it please the court. As Ms. Simons has framed her claim on appeal, Benesch's liability rises and falls with the liability of its agent, Mr. Barker. Even if the facts alleged in this complaint were sufficient to state a claim against Mr. Barker, which Benesch does not concede, it does not follow that Benesch is automatically liable for Mr. Barker's conduct. On the facts alleged here, it is not plausible to infer that Mr. Barker was still acting in the scope of his employment for Benesch when he negotiated a new job with a different law firm. But he was continuing to represent her, correct? He was, Your Honor. And he maintained those duties to her until the day he left Benesch, correct? Yes, Your Honor. I have a little trouble understanding your position then. To draw that inference, Your Honor, Ms. Simons needed to plead additional facts not alleged here to allow the court to infer that Benesch knew Mr. Barker was negotiating. Barker is Benesch, right? He was a partner. As long as he is acting within the scope of his employment, yes. But if he starts to act for the benefit of himself, to the detriment of his employer, or for the benefit of a different employer. Can you point us to case law that supports this position as applied to a lawyer who is continuing to represent a client? Your Honor, I think the Worth case that we cite, which speaks to Ohio law on this point, I do think addresses that. How so? In the Worth case, Your Honor, a law firm cannot act other than through its attorneys. Right. But when the attorney is no longer acting for the benefit in the ordinary course of his employment, which Worth states he is no longer acting for the benefit of that employer and cannot bind that employer through a theory of vicarious liability. So it sounds like your theory is that if a partner is breaching a duty of loyalty to his current partners and to his clients, the firm has no responsibility for that. Your Honor, as alleged here, there are not facts to support an inference that Benesch was aware of what Mr. Barker was negotiating with a different law firm at the time. And to draw... Benesch, or Barker himself, is a partner in Benesch and is negotiating for new employment and is representing Ms. Simon all at the same time, right? Correct. Your position is just startling to me and I'm looking... I get the abstract concept that law firms in the abstract can't commit legal malpractice without doing so through an agent. I get that. But I don't see how they're off the hook where the agent who is committing legal malpractice is still their agent. Your Honor, the issue here is that on these facts as pleaded, there is not sufficient detail to infer plausibly that Benesch would knowingly act... Benesch, through its attorney, would knowingly act in a way that is adverse not just to its client but to the law firm itself as a firm and a business. And for that reason and for the other reasons articulated, the independent reasons articulated by the district court, we request the court affirm the district court's judgment. Thank you, Ms. Schaller. Mr. Gordon? Thank you, Your Honor. A couple of things. We're not asking the court to reinstate fraud claims. We're saying on appeal there was... If you study what was pled, there's one clear claim and that's legal malpractice and that ought to be the claim that survives. In terms of vicarious liability, we're not saying that somebody who's job hunting is doing it for the benefit of their current employer. What we're saying is that because he's an officer of the court and has fiduciary duties and has to fulfill them for the benefit of his employer, he has to tell his client that he's job hunting with opposing counsel. And he has to get his client's permission to do that. And if he doesn't do those, the alternative is to withdraw from the case. He doesn't get to do what he did here. As for the three-year statute of limitations in Colorado, honestly, I think it wonderfully illustrates the problem. This case was decided under Rule 12. All of these issues should be talked about under Rule 56 if what we want to do is avoid a trial here. In Colorado, the statute of limitations is treated as substantive law. That means Colorado's conflicts of law analysis would have kicked in. And under Colorado law, they definitely would have applied Ohio law. But we didn't have that conversation in the context of a Rule 12 motion, nor would we have, nor is it here on appeal. So I would ask the court to look at this purely for what it is. It's a Rule 12 dismissal. It was done in error. And please reinstate Ms. Sima's claim. Thank you. Thank you, Mr. Gordon. The case is taken under advisement.